Anthony K. McClaren, (SBN 232515)
PERLEBERG MCCLAREN LLP
4223 Glencoe Avenue, Suite A220
Marina del Rey, California 90292
Telephone: (323) 741-6500
Facsimile: (323) 426-2405
akm@pmlegal.law

Attorneys for Plaintiffs
TIMOTHY STEINHAUER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA IN ADMIRALTY

| | |
|---|---|
| TIMOTHY STEINHAUER, an individual, and JULIE STEINHAUER, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> PACIFIC BOAT SERVICES, INC., a California corporation dba PACIFIC BOAT DETAILING and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES:** <br><br> **1. NEGLIGENCE** <br> **2. BREACH OF CONTRACT** <br> **3. INTENTIONAL MISREPRESENTATION** <br> **4. CONVERSION** <br><br> Complaint Filed: <br> Trial Date: |

COMES NOW, Plaintiffs TIMOTHY STEINHAUER, an individual and JULIE STEINHAUER by and through their counsel, and for their Complaint for damages against Defendant PACIFIC BOAT SERVICES, INC., a California corporation dba PACIFIC BOAT DETAILING and DOES 1 through 20, hereby allege as follows:

**JURISDICTION AND VENUE**

1. This is an admiralty and maritime cause within the meaning of Fed. R. Civ. P. 9(h) and 38(e). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

2. Plaintiff TIMOTHY STEINHAUER is and was, at all relevant times hereto an individual residing in Klamath Falls, State of Oregon. Plaintiff JULIE STEINHAUER is and was, at all relevant times hereto, an individual residing in Klamath Falls, State of Oregon. Plaintiffs

TIMOTHY STEINHAUER and JULIE STEINHAUER are sometimes collectively referred to as "Plaintiffs".

3. Upon information and belief, Defendant PACIFIC BOAT SERVICES, INC., a California corporation dba PACIFIC BOAT DETAILING (hereinafter "Defendant" or "PBS"), is and was, at all relevant times hereto, a California corporation engaged in business in the City of Stockton, State of California, County of San Joaquin.

4. The vessel that is the subject of this lawsuit, *Adventure Alley* ("Vessel") is located at Defendant's place of business.

5. Venue is proper in the United States District Court for the Eastern District of California under 28 U.S.C. § 1391(b) as the Defendant business is headquartered and conducts business in the Eastern District of California. In addition, venue is proper in the United States District Court for the Eastern District of California because in an admiralty case, venue is proper in any court with personal jurisdiction over the defendant.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as Does 1 through 20, inclusive, are currently unknown to Plaintiffs, who therefore sues said defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege that each of these fictitiously named defendants is in some manner responsible for the events and damages alleged herein and will seek leave of court to amend this Complaint to show the true names and capacities when the same have been ascertained.

7. Plaintiffs are informed and believe and thereon allege that at all times mentioned here, each of the Defendants, as well as Does 1 through 20, were the principal, agent, authorized representative, partner, joint venture, co-conspirator, representative, alter ego, or employee of each of the other Defendants, as well as Doe 1 through 20, and in doing the things alleged herein, was acting within the course and scope of such relationship with the full knowledge, consent, authority, and/or ratification of each of the other Defendants and Does 1 through 20.

8. Plaintiffs allege on information and belief that, at all times mentioned, Defendants and each of them, pursued a common course of conduct, acted in concert and conspired with one another, and aided and abetted one another to accomplish the wrongs alleged herein. Plaintiffs further allege

that Defendants and each of them ratified the unlawful conduct of each of the other Defendants who were acting within the scope of their agency or employment in doing the things alleged herein.

## BACKGROUND FACTS

### Initial Purchase and Scope of Work

9. On or about August 2021, Plaintiffs purchased a 1969 Pacemaker- 65-foot LOA (the "Vessel"). At that time, the Vessel was in seaworthy condition. However, as the Vessel needed some MINOR maintenance and improvements, the Plaintiffs sought out and located Pacific Boat Services dba Pacific Boat Detailing Inc. in Stockton, California ("PBS").

10. On or about December 13, 2021, Plaintiffs entered into an agreement with PBS for the maintenance and improvements of the Vessel, including sealing of the hull and new paint job. More specifically, the scope of work included: Bottom Paint Job, Rutter House Maintenance, Swim Deck repair, painting of Vessel from water line down (prime hull, paint and seal with cotton and Sikaflex, (as recommended by PBS, although industry standard for wooden vessels recommends against its use, which the Plaintiffs would learn later), and other general maintenance.

### The First Lift Out

11. On or about December 14, 2021, PBS lifted the Vessel out of the water to begin the maintenance and repairs. When PBS lifted the Vessel, it immediately damaged the hull, including damaging the Ribs, Knees, Keel Shift, and Trim Rails (with more damage occurring on the Port Side of the Vessel). Following this event, Ramon Mata, an employee of PBS, told Plaintiffs he recommended "crushing" the Vessel, and then charging Plaintiffs $35,000.00 for that service, as if he were somehow extending a courtesy to Plaintiffs for the damage PBS caused when it initially began to repair the Vessel. Plaintiff TIMOTHY STEINHAUER, did not agree with this recommendation and stated that repairs could be done to the Vessel, as opposed to crushing her.

12. Mr. Mata agreed and offered to perform the repairs for $880.00/day, not including parts and material. To minimize expenses, Plaintiff TIMOTHY STEINHAUER agreed to purchase the parts and materials for the repair. Thereafter, repairs were made on the rib and knees of the Vessel. Prior to this repair, James Ferguson, an employee of PBS, marked the planks that needed repair. Up to this point, the hull still drained water when the Vessel was out. Mr. Ferguson drilled approximately

1  10 holes of approximately one quarter inch to further drain the Vessel.  Mr. Ferguson informed Plaintiffs that the Vessel would sink if PBS did not plug those holes.

13. Also, in order to service the Vessel and make it seaworthy, it would need thousands of fasteners.  Again, to minimize the cost, Plaintiffs agreed to purchase the necessary fasteners.  Plaintiffs purchased a total of 7000 very sturdy bronze fasteners at a cost of $10,000, and provided them to PBS for installation on the Vessel.  Industry standard for wooden boats mandates that old screws be removed before new screws are inserted, however, PBS did not do this.  Instead, it kept in the old screws and inserted only a portion of the new screws, completely compromising the integrity of the planks.

**The First Splash Following Repairs**

14. On June 14, 2022, following the above repairs, the Vessel was placed into the water.  The Vessel began to immediately take on water in many places, causing the bilge pumps to run and the high-water alarm to sound.  PBS removed the Vessel from the water and allowed it to drain, while still in the lift.   In doing the above, PBS failed to have the minimum tools available to it to pump water (known as a sump pump), in the event of failed sealing.  Rather, PBS purchased a light duty sump pump to address the issue, and charged Plaintiffs for this tool.  After being removed from the water for a period of several hours, PBS splashed the Vessel again, to determine its seaworthiness.

15. As a result of the above failures, the main salon, crew quarters, and engine room of the Vessel were flooded.  This caused irreparable damage to batteries, electronics, solar controllers and batteries, as well as new diesel engines and the pony motor.  The combined value of these items is approximately $71,000.00.

**The Second Lift Out, Second Splash, and Damages**

16. On or around June 15, 2022, PBS lifted the Vessel out of the water, again, to make corrections to the unsealed hull, which should have been achieved during the initial repairs.  Thereafter, on June 16, 2022, PBS splashed the Vessel again, and informed Plaintiffs that she was doing well, but was still taking on water and pumping out.

17. On or about June 18, 2022, Plaintiffs inspected the Vessel.  They observed multiple areas of damage that were not previously on the Vessel.  This included cut wires to bilge pumps and

a disabled high-water alarm.

**The Vessel Sinks**

18. On or about July 10, 2022, the Vessel completely sunk, requiring it be pulled out of the water and placed on dry land. Plaintiffs requested that the motors be "pickled" (drain diesel and then fill with diesel), and to keep the hull wet. However, it was never completed, and further a burlap containment system, also agreed to by PBS, was not completed by PBS. After the Vessel completely sunk, PBS retained possession of the Vessel.

19. Throughout Defendants' repair and maintenance of the Vessel, numerous issues arose to the detriment of Plaintiffs due to Defendants' failure to perform as agreed, including, but not limited to:

    a. Improper wiring

    b. Poorly conditioned swim deck

    c. Uninstalled fuel tanks

    d. Damaged fuel lines

    e. Damaged Vessel from chemicals/fuels

    f. Improper use of Sikaflex

    g. Destroyed shaft

    h. Destroyed bilge pumps

    i. Destroyed engine

    j. Damaged electronics

    k. Damaged solar controllers

    l. Damaged main salon

    m. Damaged crew quarters

20. These issues caused significant delay and added cost beyond reasonable expectation to the maintenance, improvement and repair of the Vessel. Worse, these issues caused the once seaworthy Vessel to be unseaworthy. Additionally, Plaintiffs should have been provided a credit for the damage done to the Vessel by PBS.

21. Plaintiffs are informed and believe, and thereon allege, that Defendants did not intend

to perform such promises under the Agreement at the time Defendants made them.

22.     Plaintiffs reasonably relied on such promises because Defendants are duly licensed and experienced contractors and continued to give Plaintiffs assurances they would perform as agreed.

23.     As alleged above, Defendants did not fully, nor competently execute the maintenance, improvements and repairs under the provisions of the Agreement.

24.     As a result of Defendants' false promises, Plaintiffs suffered through significant delays to the maintenance, improvements and repairs with substantial damage to the Vessel.  As such, Plaintiffs' reliance on Defendants' false promises was a substantial factor in the harm sustained by Plaintiffs.

25.     Plaintiffs are informed and believe that the aforementioned conduct of Defendants was carried out as part of a deliberate and systematic scheme to deprive Plaintiffs of their monies by misleading Plaintiffs into believing that the Vessel would be repaired as promised. Such conduct was oppressive, fraudulent, and malicious, and subjected Plaintiffs to cruel and unjust hardship in a willful and conscious disregard of its right, warranting exemplary and punitive damages for reasons set forth herein and for at least the following reasons:

   a.     It was done for the purpose and intent of putting Defendants' own personal and pecuniary interest ahead of Plaintiffs' rights and interests to realize the economic benefits of the Agreement and to all reasonably foreseeable damages and losses caused by the failure of Defendants to perform as agreed.

   b.     It was done for the purpose and intent of inducing Plaintiffs into continuing to pay Defendant based on the promise that Defendants would repair any and all defects, so that Defendants could obtain additional monies at the expense of Plaintiffs.

   c.     It was done for the purpose and intent of unlawfully interfering with the rights of Plaintiffs to receive the full benefits of the Agreement, and the expectations that arise from the same.

26.     Defendants had a duty to properly repair the Vessel under the Agreement and remedy any issues that arose during such repair.  Instead, Defendants failed to properly perform those duties and left Plaintiffs with an unseaworthy Vessel.

27. As a result of Defendants' negligence, recklessness, incompetence and violations of the Agreement as described above, the repair of the Vessel was significantly delayed and ultimately the boat was rendered unseaworthy. These delays were a direct result of the negligence, incompetence, and failure of Defendants to perform their duties under the Agreement. Additionally, the final results of the repair and maintenance of the once seaworthy Vessel did not meet the standard agreed to under the Agreement.

28. As a direct and proximate result of the aforementioned conduct, Plaintiffs have suffered financial loss in an amount to be determined at trial, but no less than $500,000.00.

29. As a result of Defendants' misconduct, an award of punitive damages is also warranted.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

## (Against Defendant PBS and DOES 1 through 20)

30. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

31. By virtue of the warranties and promises contained in the Agreement with Plaintiffs, Defendants owed duties to Plaintiffs to act in compliance with the standards of reasonable care imposed upon them, including but not limited to taking appropriate measures to do the following:

    a. Conduct the maintenance, improvements and repairs of the Vessel in a professional manner and without undue delay;

    b. Remedy any and all defects caused by Defendants;

    c. Provide adequate communication to and among Plaintiffs;

    d. Supervise subcontractors, employees, and agents to make certain that the service provided met the appropriate standards; and

    e. Adhere to the highest standards of honesty, integrity, fair dealings, and ethical conduct in all dealings with Plaintiffs.

32. Defendants breached this duty by failing to adhere to the standards of reasonable care stated herein. As a result, Plaintiffs dealt with unnecessary delays, unprofessional behavior,

unexpected expenses, and unsatisfactory results throughout the duration of the repairs causing the once seaworthy Vessel to be unseaworthy.

33. As a direct, legal, and proximate result of the aforementioned conduct, Plaintiffs have suffered financial loss in an amount to be determined at trial, but in any event no less than $500,000.00.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
## (Against Defendant PBS and DOES 1 through 20)

34. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

35. On or about December 13, 2021, Plaintiffs entered into an agreement with PBS for the maintenance and improvements of the Vessel, including sealing of the hull and new paint job. More specifically, the scope of work included: Bottom Paint Job, Rutter House Maintenance, Swim Deck repair, painting of Vessel from water line down (prime hull, paint and seal with cotton and Sikaflex, (as recommended by PBS, although industry standard for wooden vessels recommends against its use, which the Plaintiffs would learn later), and other general maintenance. Defendants further agreed to repair the Vessel when it was damaged by PBS during the First Lift, including, but not limited to repairing the damaged hull, including damaged Ribs, Knees, Keel Shift, and Trim Rails, and damage on the Port Side of the Vessel.

36. Plaintiffs performed all of its obligations under the Agreement.

37. Defendants on the other hand, breached the material terms of Agreement by failing to properly repair the Vessel.

38. Defendants' breaches have directly harmed Plaintiffs in an amount yet to be determined as the cost to repair Vessel are not yet ascertained, nor is the full extent of the impact of the damage to the Vessel fully known at this time.

39. These breaches by Defendants are a substantial factor in causing financial harm to Plaintiffs.

///

## THIRD CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

### (Against Defendant PBS and DOES 1 through 20)

40. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

41. At all relevant times herein, Defendants, and each of them falsely represented to Plaintiffs that they could repair Plaintiffs' Vessel in a timely, professional and competent manner.

42. These representations were false, and at the time Defendants made these misrepresentations, Defendants knew that they were false or made them recklessly without any regard for their truth because Defendants knew that they did not have the requisite skill or competence to adequately repair the Vessel as promised.

43. Defendants intended for Plaintiffs to rely on Defendants' false representations when they made the representations described herein, including representing that they were a competent company to execute maintenance, improvements and repairs on Plaintiffs' Vessel.

44. At the time of Defendants' misrepresentations, Plaintiffs were ignorant of the true facts, including Defendants' actual level of skill and professionalism, and of Defendants' intent not to perform as agreed. Plaintiffs could not, in the exercise of reasonable diligence, have discovered these acts of fraud due to Defendants' concealments and constant false reassurances. Plaintiffs in fact did not realize the fraud and the fact that the fraudulent conduct was part of a systematic scheme from the outset until the Vessel repairs were allegedly completed and still did not meet the standard agreed upon. As such, Plaintiffs reasonably relied on such misrepresentations because Defendants are duly experienced and continued to give Plaintiffs assurances that they would perform as agreed. Had Plaintiffs known of the actual intent of Defendants, Plaintiffs would have selected a different company to perform the maintenance, improvements and repair to their Vessel.

45. As a result of Defendants' misrepresentations, Plaintiffs have suffered significant damages in an amount according to proof at the time of trial. As such, Plaintiffs' reliance on Defendants' misrepresentations was a substantial factor in the harm sustained by Plaintiffs.

46. Plaintiffs are informed and believe that the aforementioned conduct of Defendants was

carried out as part of a deliberate and systematic scheme to deprive Plaintiffs of their monies by misleading Plaintiffs into believing into believing that the Vessel would be repaired as promised. Such conduct was oppressive, fraudulent, and malicious, and subjected Plaintiffs to cruel and unjust hardship in a willful and conscious disregard of its right, warranting exemplary and punitive damages, for reasons set forth herein and for at least the following reasons:

    a.    It was done for the purpose and intent of putting Defendants' own personal and pecuniary interest ahead of Plaintiffs' rights and interests to realize the economic benefits of the Agreement and to all reasonably foreseeable damages and losses caused by the failure of Defendants to perform as agreed.

    b.    It was done for the purpose and intent of inducing Plaintiffs into continuing to pay Defendant based on the promise that Defendants would repair any and all defects, so that Defendants could obtain additional monies at the expense of Plaintiffs.

    c.    It was done for the purpose and intent of unlawfully interfering with the rights of Plaintiffs to receive the full benefits of the Agreement, and the expectations that arise from the same.

47.    As a direct, legal, and proximate result of the aforementioned conduct, Plaintiff has suffered financial loss in an amount to be determined at trial, but in any event no less than $500,000.00.

48.    As a result of Defendant's misconduct, an award of punitive damages is also warranted.

### FOURTH CAUSE OF ACTION

### CONVERSION

### (Against Defendant PBS and DOES 1 through 20)

49.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

50.    Plaintiffs have a right to possess their Vessel.

51.    Defendant intentionally and substantially interfered with Plaintiffs' property by retaining and taking possession of the Vessel.

52.    Plaintiffs did not consent to Defendants taking and retaining the Vessel.

53.    Plaintiffs were harmed as a result of Defendants' conversion of Plaintiffs' Vessel and

the right to possess the Vessel in an amount to be proven at trial.

54. Defendants were a substantial factor in causing Plaintiffs' harm.

55. Defendants' conduct was oppressive, malicious and fraudulent. Defendants intended to cause injury to Plaintiffs, and the despicable conduct by Defendants was carried on with a willful and conscious disregard for Plaintiffs' rights.

56. Accordingly, Plaintiffs seek both actual damages in tort and punitive or exemplary damages in an amount appropriate to punish and make an example of Defendants and to deter such wrongful conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants and each of them as follows:

**AS TO THE FIRST AND SECOND CAUSES OF ACTION**

1. For compensatory damages according to proof at trial, but in an amount not less than $500,000.00;

2. For attorney's fees; and,

3. For costs of suit incurred herein.

**AS TO THE THIRD AND FOURTH CAUSES OF ACTION**

1. For punitive and exemplary damages; and,

2. For costs of suit incurred herein.

**ON ALL CAUSES OF ACTION**

1. For such other further relief as the court may deem just and proper.

Dated: April 17, 2023                    **PERLEBERG MCCLAREN LLP**

/s/ *Anthony K. McClaren*

Anthony K. McClaren
Attorneys for Plaintiffs